0236

Gwendolyn A. LUDWICK, Appellant, v. THIS MINUTE OF CAROLINA, INC., and Sheldon Solomon and Florence Solomon, Respondents.

(321 S. E. (2d) 618)

Court of Appeals

*Paul E. Tinkler*, Charleston; and *George B. Bishop*, Moncks Corner, *for appellant.*

*Pledger M. Bishop, Jr.*, and *David A. Soderlund*, Charleston, *for respondents.*

Heard Feb. 20, 1984.

Decided Aug. 21, 1984.

SANDERS, Chief Judge:

Appellant Gwendolyn A. Ludwick sued respondents This Minute of Carolina, Inc., and its managers, Sheldon Solomon and Florence Solomon, alleging she was wrongfully discharged from her employment with the corporation. The trial judge ordered nonsuit at the close of Mrs. Ludwick's case. We affirm.

## I.

Mrs. Ludwick first argues that the defense of failure to state a cause of action was waived because it was not raised in writing five days before trial. We reject this argument.

Section 15-13-370 of the 1976 Code of Laws of South Carolina states as follows:

> Failure to take objection by demurrer or answer.
>
> If no such objection be taken either by demurrer or answer the plaintiff or defendant shall be deemed to have waived the objection, excepting only an objection (a) to the jurisdiction of the court, (b) that the complaint does not state facts sufficient to constitute a cause of action or (c) that the answer does not state facts sufficient to constitute a defense.
>
> In cases in which the objection is made that the complaint does not state facts sufficient to constitute a cause of action or that the answer does not state facts sufficient

to constitute a defense the party making such objection shall give at least five days' notice in writing to the opposite party of the grounds of such objection.

The Transcript of Record in the present case reveals that This Minute and the Solomons served a substituted motion for summary judgment in March, 1981, alleging the complaint failed to state a cause of action. At the pre-trial conference in April, 1981, counsel for all parties were advised the trial judge would not consider the motion prior to trial of the case which began later that same morning. At the conclusion of Mrs. Ludwick's evidence, This Minute and the Solomons moved "for a nonsuit on the grounds that plaintiff has failed to state a cause of action against the defendant[s] under the testimony presented by plaintiff's witnesses." Although it does not appear in the Transcript of Record before us, according to the Statement, opposing counsel objected to the timeliness of the motion on the ground a motion to dismiss for failure to state a cause of action must be made five days before trial. Both counsel also argued the motion on the basis of the substantive law issue addressed in part II of this opinion. The trial judge then granted nonsuit.

Counsel for Mrs. Ludwick misconstrues the motion for nonsuit which was based on the failure to *prove* the cause of action, not failure to state a cause of action *in the complaint.* Use of the word "state" instead of "prove" in the motion apparently brought about this confusion. However, we regard this misstatement of the motion as semantic only and of no substantive consequence. Therefore, section 15-13-370 is inapplicable.

## II.

Mrs. Ludwick next argues that, under the facts here, the trial judge erred in failing to apply the "public policy" exception to the rule relating to employment at-will.

In ruling on a defendant's motion for nonsuit, evidence must be viewed in the light most favorable to the plaintiff. *Associate Management, Inc. v. E. D. Sauls Construction Company,* 279 S. C. 219, 305, S. E. (2d) 236 (1983); *Duke v. Westvaco Development,* 279 S. C. 464, 309 S. E. (2d) 293 (S. C. App. 1983). Viewed in the light most favorable to Mrs. Ludwick, the facts here may be summarized as follows:

Mrs. Ludwick was employed as a seamstress by This Minute of Carolina, Inc. Her employment was at-will in that there was no agreement for any specified period of employment. Mr. and Mrs. Solomon were the managers of the corporation.

The bookkeeper for the corporation brought Mrs. Ludwick to its office where she was served with a subpoena by a person identifying himself as a field officer for the South Carolina Employment Security Commission. The subpoena required her to attend a commission hearing to testify as a witness in a matter apparently pending between the corporation and two other employees. The subpoena concluded with the standard language, "Herein fail not under penalty of the punishment provided in the law."[1] Mrs. Ludwick said she understood this to mean, "if I didn't show up for the hearing, that I would be punished."

Later in the day, Mrs. Solomon approached Mrs. Ludwick as she worked at her sewing machine and asked about the subpoena. When Mrs. Ludwick responded, "I have to testify, I guess," Mrs. Solomon asked her if she "liked" her job. Mrs. Ludwick said when she thought about this later she understood Mrs. Solomon to be threatening her employment.

The next day, Mrs. Ludwick and another subpoenaed employee asked Mr. Solomon about getting off from work to attend the hearing. She described the conversation that followed thusly: "He said if we went, don't come back, we didn't have a job. I said I didn't think you could do that. We had a subpoena to go to court (sic). He said he can do anything he wants to."

Despite this conversation, Mrs. Ludwick attended the commission hearing and testified as required by the subpoena. When she returned to work the next day, she was fired by Mrs. Solomon.

Since 1936, South Carolina has embraced the rule that "a contract for permanent employment, so long as it is satisfactorily performed, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party." *Shealy v. Fowler*, 182 S. C. 81, 87, 188

---

[1] Section 41-29-210 of the 1976 Code of Laws of South Carolina provides a criminal penalty for the failure to respond to a subpoena of the South Carolina Employment Security Commission.

S. E. 499, 502 (1936).[2] Subsequent cases have restated the holding of *Shealy*, verbatim or in subsance. *Weber v. Perry*, 201 S. C. 8, 21 S. E. (2d) 193 (1942); *Orsini v. Trojan Steel Corp.*, 219 S. C. 272, 64 S. E. (2d) 878 (1951); *Gainey v. Coker's Pedigreed Seed Co.*, 227 S. C. 200, 87 S. E. (2d) 486 (1955). More recent cases express the rule even more succinctly to the effect that "an employment at-will may be terminated at any time by either party for any reason or for no reason at all." *Hudson v. Zenith Engraving Company, Inc.*, 273 S. C. 766, 769, 259, S. E. (2d) 812, 813 (1979); *Ross v. Life Insurance Company of Virginia*, 273 S. C. 764, 259 S. E. (2d) 814 (1979); *Todd v. South Carolina Farm Bureau Mutual Insurance Company*, 276 S. C. 284, 278 S. E. (2d) 607 (1981). *See also Raley v. Darling Shop of Greenville, Inc.*, 216 S. C. 536, 59 S. E. (2d) 148 (1950) (cited in *Hudson* as following this version of the rule).

This rule was first developed in the nineteenth century and until recently has had fairly consistent application by a majority of American jurisdictions. Its origin can be traced to a treatise by Professor H. G. Wood first published in 1877. H. Wood, *A Treatise on the Law of Master and Servant* § 134, at 272 (2d ed. 1886).

The rule is based on formal application of contract law. *See, e.g., Payne v. The Western & Atlantic Railroad Company*, 81 Tenn. 507 (1884) (justified the rule on the principle of mutuality of contract; after holding an employer has an absolute right to fire an employee "for good cause, for no cause, or even for a bad cause," the court added grandly, "It is a right which an employee may exercise in the same way, to the same extent, for the same cause or want of cause as the employer").[3]

Courts in a number of states have recognized an exception to this rule based on public policy considerations as here urged by Mrs. Ludwick. *See, e.g., Firestone Textile Company*

---

[2] *See also Johnson v. American Railway Express Co.*, 163 S. C. 191, 198, 161 S. E. 473, 475-476, (1931) ("if an employment is for an indefinite term, and each party may terminate it at his pleasure, the discharge even without cause will afford the employee no ground of complaint"); *Gantt v. Southern Ry. Co.*, 125 S. C. 518, 524, 118 S. E. 920, 921 (1923) (nonsuit granted on ground that under a hiring at will, "either party may terminate at any time, with or without cause").

[3] The Association of Trial Lawyers of America says this holding is reminiscent of the observation by Anatole France as to the "majestic equality of the law which forbids the rich as well as the poor to sleep under bridges . . . ." 27 ATLA L. Rep. 58 (March 1984).

*Division, Firestone Tire and Rubber Company v. Meadows,* 666 S. W. (2d) 730 (Ky. 1983); *Brockmeyer v. Dun & Bradstreet,* 113 Wis. (2d) 561, 335 N. W. (2d) 834 (1983) (two of the most recent cases applying a "public policy" exception).[4] In *Hudson,* our Supreme Court acknowledged that other states have recognized this exception and, while it did not reject the possibility of some day adopting the exception, neither did it do so. Thus, *Hudson,* particularly when read together with *Ross* (filed the same day) and *Todd* (filed two years later), restating the rule without exception, cannot be read as recognizing the "public policy" exception or any other.

In addition to the "public policy" exception, courts have found other ways to modify the rule based on principles of both contract and tort law. *See* Survey, *Contracts,* 32 S.C.L. Rev. 49 (1980); Note *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv. L. Rev. 1816 (1980); Annot., 12 A.L.R. 4th 544 (1982). Apparently, none of these other theories would avail Mrs. Ludwick under the facts here, inasmuch as she takes exception to the order of the trial judge on this point only as to his failure to apply the "public policy" exceptions.

In *Todd,* our Supreme Court allowed an employee to maintain an independent cause of action against his employer for the tort of outrage or intentional infliction of emotional distress committed in connection with a firing.[5] However, here, Mrs. Ludwick pleaded only one cause of action which she characterizes as "a cause of action for wrongful discharge." While she testified, "I felt humiliated and embarrassed because I had never been fired before . . .," she offered no evidence that she suffered emotional distress so "severe" that "no reasonable person could be expected to endure it" as required for the tort of outrage. *Ford v. Hutson,* 276 S. C. 157, 276 S. E. (2d) 776 (1981); *Restatement (Second) of Torts,* § 46, comment j (1965). Neither did Mrs. Ludwick take any exception to the order of the trial judge based on this cause of action.[6] *Cf. Hubbard v. United Press International,*

---

[4] Courts in other states have refused to adopt this exception. *See, e.g., Murphy v. American Home Products Corporation,* 58 N. Y. (2d) 293, 461 N. Y. S. (2d) 232, 448 N. E. (2d) 86 (1983).

[5] Other causes of action, clearly not applicable here, were also allowed.

[6] In fairness to counsel for Mrs. Ludwick, it should be noted that her complaint was filed prior to both *Ford,* which first expressly recognized the tort of outrage in South Carolina, and *Todd.*

*Inc.,* 330 N. W. (2d) 428 (Minn. 1983) (recognized validity of tort action by employee for intentional infliction of emotional distress by employer in connection with a firing but reversed verdict for employee due to failure to prove outrageous conduct or sufficiently severe emotional distress).

Therefore, this appeal presents the single question of ▮ whether to adopt the "public policy" exception to the rule that "an employment at-will may be terminated at any time by either party for any reason or for no reason." As previously discussed, our Supreme Court has not adopted this exception and has restated the rule after acknowledging that an exception based on public policy is recognized in other states. Where the law has been recently addressed by our Supreme Court and is unmistakeably clear, this court has no authority to change it. *Bain v. Self Memorial Hospital,* 314 S. E. (2d) 603 (S. C. App. 1984). When the court said in *Ross* and *Todd* that an employer has the right to fire an employee for "*any* reason" we must assume that it meant what it said until it tells us otherwise.[7] Of course, Mrs. Ludwick has the opportunity to seek certiorari of this decision.

For this reason, the decision of the trial judge is

Affirmed.

SHAW and BELL, JJ., conccur.

---

[7] We further note that the legislature has since provided a "public" remedy for the conduct here alleged. It is now a crime to intimidate or impede any witness or potential witness. *See* S. C. Code Ann. § 16-9-340 (Supp. 1983). This Code section would have no application here because it did not take effect until some three weeks after Mrs. Ludwick was fired.